UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| TIMOTHY QUINN,<br><br>                              Plaintiff,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>                              Defendant. | No. 20-CV-3261 (KMK)<br><br>OPINION & ORDER |

<u>Appearances</u>

Kyle A. Seiss
Cohen LeBarbera & Landrigan LLP
Chester, NY
*Counsel for Plaintiff*

Rachael L. Doud
U.S. Attorney's Office, SDNY
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Timothy Quinn ("Plaintiff") brings this Action against the United States of America

("Defendant" or the "Government") under 26 U.S.C. § 7422, seeking to recover $22,274.00 in

federal income taxes that he paid to the Government in error.  (Compl. ¶¶ 1, 10–11 (Dkt. No. 1).)

Before the Court is the Government's Motion To Dismiss this Action for lack of subject matter

jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), (*see* Not. of Mot. (Dkt. No.

15)), or, in the alternative, for failure to state a claim, pursuant to Federal Rule of Civil

Procedure 12(b)(6), (*see* Mem. of Law in Supp. of Gov't Mot. To Dismiss ("Gov't Mem.")

7–8 (Dkt. No. 16); Reply Mem. of Law in Further Supp. of Mot. To Dismiss ("Gov't Reply")

1, 6 (Dkt. No. 20)).  For the following reasons, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and are taken as true for the purposes of resolving the instant Motion.

Plaintiff is a former sergeant in the New York City Police Department.  (Compl. ¶ 6.) After the terrorist attacks of September 11, 2001, Plaintiff was assigned to search for human remains and personal effects among the wreckage from the attacks at the Fresh Kills Landfill in Richmond County, New York.  (*Id.*)  Plaintiff alleges that the terrorist attacks and his involvement in the subsequent recovery work caused him to develop several serious and debilitating ailments, such as post-traumatic stress disorder, reactive airway disease, anxiety, cardiomyopathy, fatigue, jitteriness, lack of concentration, and memory issues.  (*Id.* ¶ 7.)

As a result of his medical conditions, Plaintiff was deemed eligible for Social Security Disability Insurance ("SSDI") benefits in 2010.  (*Id.* ¶ 8.)  But because Plaintiff allegedly had become "incapacitated and financially disabled," he did not realize "that, pursuant to the Tax Relief for Victims of Terrorist Attacks of 2001," he did not have to include such benefit payments as income on his tax returns.  (*Id.* ¶ 9.)[1]  Accordingly, Plaintiff avers that in 2010 he paid $22,274.00 in taxes that were not owed to the Government.  (*Id.* ¶¶ 10–11.)  In his Complaint, Plaintiff states that once his financial representative identified this mistake, Plaintiff "swiftly" sought to correct this mistake by amending his 2010 tax return through the filing of an Internal Revenue Service ("IRS") Form 1040-X (the "Refund Claim" or the "Claim").  (*Id.* ¶ 12; *see also id.* ¶ 23 (alleging that he "timely filed his 2010 amended federal tax return").)  The

---

[1] Plaintiff likely is referring to the Victims of Terrorism Tax Relief Act of 2001, Pub. L. No. 107-134, 115 Stat. 2427 (2002).

Complaint, however, is silent as to when Plaintiff filed his Refund Claim, nor does it specify the basis on which the IRS eventually denied the Claim, simply noting that, "[n]otwithstanding the foregoing, the IRS has failed to refund the Plaintiff's overpayment." (*Id.* ¶ 14.)

Plaintiff now brings this Action pursuant to 26 U.S.C. § 7422, alleging that the IRS "wrongly denied" his amended tax return and "wrongfully refused to refund [his] overpayment of $22,274.00" in federal taxes. (*Id.* ¶¶ 1, 24.) Plaintiff argues that his Action is timely pursuant to 26 U.S.C. § 6511(h), which provides that the two-year limitations period in which a taxpayer must file a tax refund claim "shall be suspended" during any period in which a taxpayer is "financially disabled," meaning the taxpayer "is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment . . . which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 26 U.S.C. § 6511(h)(1), (2)(a). (*See* Compl. ¶¶ 15–16.)[2] Plaintiff alleges that he "was incapacitated and financially disabled at all relevant times." (*Id.* ¶ 17.) In addition, although § 6511 states that "[a]n individual shall not be treated as financially disabled during any period that such individual's spouse . . . is authorized to act on [his] behalf . . . in financial matters[,]" 26 U.S.C. § 6511(h)(2)(B), Plaintiff avers that "no other individual had the authority to act on [his] behalf regarding [such] matters during [his] period of financial disability," (Compl. ¶ 19).

B. Procedural History

After Plaintiff filed his Complaint on April 24, 2020, (*see* Dkt. No. 1), the Government filed a pre-motion letter on July 6, 2020 (the "Government's Pre-Motion Letter") outlining its

---

[2] Section 6511 provides that a "[c]laim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later . . . ." 26 U.S.C. § 6511(a). This case involves the latter, two-year limitations period.

anticipated motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(1) of the Federal

Rules of Civil Procedure, (*see* Letter from Rachael L. Doud, Esq., to Court (July 6, 2020)

("Gov't's Pre-Mot. Letter") 1 (Dkt. No. 7)).  Plaintiff submitted a Pre-Motion Response on July

16, 2020, (*see* Letter from Kyle A. Seiss, Esq., to Court (July 16, 2020) ("Pl.'s Pre-Mot. Resp.")

1 (Dkt. No. 11)), and the Government filed its Pre-Motion Reply on July 24, 2020, (*see* Letter

from Rachael L. Doud, Esq., to Court (July 24, 2020) ("Gov't's Pre-Mot. Reply") 1 (Dkt. No.

13)).  Taken together, these pre-motion submissions provide a more comprehensive picture of

the factual background in this case.

   The Court learned, for example, that Plaintiff filed his Refund Claim on March 30, 2015.

(Gov't's Pre-Mot. Letter 1; Gov't's Pre-Mot. Letter Ex. A ("2015 Denial Letter"), at 2 (Dkt. No.

7-1).)[3]  The IRS denied Plaintiff's Refund Claim by letter dated August 28, 2015 (the "2015

Denial Letter"), which noted that "[a] claim must be filed within 3 years from the time the return

was filed."  (Gov't's Pre-Mot. Letter 1; 2015 Denial Letter 2.)  In addition to outlining the

process for appealing the IRS's decision, the letter also stated:

> If you do not agree with our decision, you can file suit to recover tax, penalties, or
> other amounts, with the United States District Court having jurisdiction or with the
> United States Court of Federal Claims. . . .  The law permits you to do this within
> 2 years from the date of this letter.  *If you decide to appeal our decision first, the 2-
> year period still begins from the date of this letter*.

(Gov't's Pre-Mot. Letter 1 (emphasis added) (quoting 2015 Denial Letter 5).)

   After the IRS denied Plaintiff's Refund Claim, a registered tax preparer filed an appeal

on behalf of Plaintiff and his wife on September 22, 2015 (the "Refund Claim Appeal").

(Gov't's Pre-Mot. Letter 1–2; Gov't's Pre-Mot. Letter Ex. B ("Refund Claim Appeal"), at 2

---

[3] Unless otherwise noted, page citations for all exhibits refer to the ECF stamp at the top
of the page.

(Dkt. No. 7-2).)  On June 3, 2016, an attorney representing Plaintiff submitted a letter on his behalf requesting that the IRS find the Refund Claim timely pursuant to 26 U.S.C. § 6511(h), which, as noted, suspends the relevant limitations period for taxpayers who are financially disabled.  (Gov't's Pre-Mot. Letter 2; Gov't's Pre-Mot. Letter Ex. C ("Financial Disability Request"), at 9 (Dkt. No. 7-3).)  Attached to this submission was a letter from Plaintiff, dated February 29, 2016 and addressed to an appeals officer at the IRS (the "February 2016 Letter"), which stated: "I am writing to you regarding my wife's role as caregiver and financial adviser to me.  Since my illness, Catherine Quinn has been managing my finances starting Dec[ember] 2002 to the present.  At no time did we fill out [a] Power of Attorney on my behalf."  (Financial Disability Request 14; *see also* Gov't's Pre-Mot. Letter 2.)  The IRS denied Plaintiff's Refund Claim Appeal on November 28, 2016.  (*See* Gov't's Pre-Mot. Reply 2; Decl. of Rachael L. Doud in Supp. of Gov't's Mot. To Dismiss ("Doud Decl.") Ex. D ("First Appeal Denial"), at 2 (Dkt. Nos. 17, 17-4).)

Plaintiff filed another appeal in January 2020.  (Gov't's Pre-Mot. Reply 2.)  In response to the IRS's request for additional information regarding his wife's involvement in his financial affairs, Plaintiff submitted a letter, dated March 31, 2020 (the "March 2020 Letter"), stating that his wife—whom he describes as a "spendthrift"—"has no financial education or background" and "ha[s] never [been] entrusted . . . to handle [his] . . . financial affairs," (*see* Gov't's Pre-Mot. Letter 2; Compl. Ex. B, at 3 (Dkt. No. 1-2)), seemingly contradicting his previous assertion that his wife "ha[d] been managing [his] finances" since December 2002, (*see* Financial Disability Request 14).  The IRS denied Plaintiff's second appeal on May 12, 2020.  (Gov't's Pre-Mot. Reply 2; Gov't's Pre-Mot. Letter Ex. D ("Second Appeal Denial"), at 3 (Dkt. No. 7-4).)  Plaintiff

has not disputed any of the Government's factual assertions regarding the timeline of his appeals and their subsequent resolution.

The Government argued in its Pre-Motion Letter that Plaintiff's Complaint should be dismissed as untimely pursuant to Rule 12(b)(1).  (Gov't's Pre-Mot. Letter 2–3.)  The Government observed that under 26 U.S.C. § 6532(a)(1), the limitations period for filing a tax refund suit under 26 U.S.C. § 7422 "expires two years after the IRS mails the taxpayer, by certified or registered mail, a notice of disallowance of the claim for refund."  (*Id.* at 2.)  As noted, the IRS's 2015 Denial Letter stated as much, and further advised Plaintiff that an appeal of the IRS's denial of a refund claim does not extend this two-year limitations period.  (*See* 2015 Denial Letter 5; *see also* Gov't's Pre-Mot. Letter 2 (noting that "any consideration, reconsideration, or action by the [IRS] with respect to [a refund] claim following the mailing of a notice by certified mail or registered mail of disallowance shall not operate to extend the period within which suit may be begun" (first alteration in original) (quoting 26 U.S.C. § 6532(a)(4))).)  Although the IRS denied Plaintiff's Refund Claim on August 28, 2015, the Government noted that the instant Action was not filed until April 24, 2020, well after the two-year limitations period for bringing such a suit had expired.  (Gov't's Pre-Mot. Letter 2–3.)  Accordingly, the Government argued that Plaintiff's "lawsuit is untimely and the Court lacks jurisdiction to entertain it."  (*Id.*)

With respect to Plaintiff's claim that he was "financially disabled at all relevant times," (Compl. ¶ 17), the Government's Pre-Motion Letter noted that unlike 26 U.S.C. § 6511, which governs the limitations period for filing an administrative refund claim with the IRS and which contains the tolling provision for "financially disabled" taxpayers, the statute that governs the limitations period for filing a tax refund lawsuit in District Court—26 U.S.C. § 6532(a)—"does

not contain a tolling provision for plaintiffs with financial disabilities," (Gov't's Pre-Mot. Letter 3 (explaining that "[w]hile the complaint does allege that Plaintiff's failure to timely file his administrative refund claim should be excused based on his alleged financial disability during that time, that is an entirely separate issue with no bearing on the timeliness of this lawsuit" (record citation omitted))).  Finally, the Government argued that § 6532 is not subject to equitable tolling.  (*Id.*)  Even if this Court were to conclude otherwise, the Government asserts that there is no basis for equitable tolling in the instant case, arguing that "Plaintiff cannot plausibly claim that financial disability justified his failure to timely file this lawsuit within two years after [the] IRS denied his refund claim," and pointing to "Plaintiff's wife's apparent involvement in his financial affairs at the relevant time," as well as the fact that "Plaintiff [has] been represented by counsel in this matter" since at least June 2016.  (*Id.* at 3–4.)

Plaintiff objected to the Government's putative motion by arguing that § 6532 is subject to equitable tolling, and that,

> [b]ecause of his disability, [he] could not bring himself, even with the assistance of counsel, to commence the instant action prior to the actual filing of the Complaint, apparently due to his belief that the IRS would honor its obligation to refund his money, his psychological exhaustion caused by the whole affair, or both.

(Pl.'s Pre-Mot. Resp. 3.)[4]  Plaintiff thus submitted that "the question of whether or not the statute of limitations should be equitably tolled in this [A]ction clearly presents a fact-intensive

---

[4] In both his Pre-Motion Response and his submissions in Opposition to the instant Motion, Plaintiff avers that at some point in time (he does not say exactly when), an appeals officer at the IRS, one "Andriy Terentyev," "advised [Plaintiff's] counsel that the IRS's original denial was in error" and said that, although he (Terentyev) "could not administratively issue a refund[,]" if Plaintiff were to "commence[] the instant [A]ction on a *pro forma* basis, [Terentyev] would help to arrange a prompt settlement to effectuate the refund."  (Pl.'s Decl. in Opp'n to Def.'s Mot. To Dismiss ("Pl.'s Decl.") ¶¶ 39–40 (Dkt. No. 19); *see also, e.g.*, Pl.'s Pre-Mot. Resp. 3.)  The Court addresses this issue *infra* n.8.

analysis" that precludes resolution on a Rule 12 motion to dismiss.  (*Id.*)  However, Plaintiff did not seek to amend his Complaint to incorporate allegations that would support his equitable-tolling argument.[5]

The Court set a briefing schedule on July 24, 2020, (*see* Dkt. No. 14), and the Government filed the instant Motion on August 24, 2020, substantially incorporating the arguments from its Pre-Motion Letter, (*see generally* Gov't's Mem.).  Plaintiff filed his Opposition on September 24, 2020, (*see* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. To Dismiss ("Pl.'s Opp'n") (Dkt. No. 18)), along with a signed declaration proffering additional facts and exhibits in support of his request to have this Court "equitably toll the statute of limitations and accept this [A]ction as timely," (*see* Pl.'s Decl. ¶ 4).  The Government filed its Reply on October 15, 2020, arguing in part that even if the Court found § 6532(a) subject to equitable tolling and construed the Government's Motion as arising under Rule 12(b)(6), Plaintiff's Complaint still must be dismissed.  (*See generally* Gov't's Reply 1, 6.)

## II.  Discussion

### A.  Standard of Review

"[B]ecause the defendant[] bear[s] the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013); *see also Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 (S.D.N.Y. 2013) (observing that "dismissing claims on

---

[5] Although the Complaint, as noted, alleges that Plaintiff was financially disabled for purposes of filing an administrative refund claim, (*see* Compl. ¶¶ 17, 19), it contains no allegations regarding the separate issue raised in the Government's instant Motion—namely, Plaintiff's alleged failure to timely file *this* lawsuit.

statute of limitations grounds at the motion to dismiss stage is appropriate only if the 'complaint clearly shows the claim is out of time'" (quoting *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999))); *Levy v. BASF Metals Ltd.*, No. 15-CV-7317, 2017 WL 2533501, at *4 (S.D.N.Y. June 9, 2017) (dismissing a second amended complaint where "[t]he untimeliness of [the] [p]laintiff's claims [was] apparent on the face of her complaint").

"The standards of review under Rules 12(b)(1) and 12(b)(6) . . . are substantively identical." *Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (quotation marks omitted) (citing *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (citation and quotation marks omitted). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the [c]ourt's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Id.* (citing *Lerner*, 318 F.3d at 128); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (citation and quotation marks omitted)). This allocation of the burden of proof is the "only substantive difference" between the standards of review under these two rules. *Fagan v. U.S. Dist. Ct. for S. Dist. of N.Y.*, 644 F. Supp. 2d 441, 446–47 & n.7 (S.D.N.Y. 2009).

### 1.  Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint."  *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on reh'g on other grounds*, 585 F.3d 559 (2d Cir. 2009) (en banc)).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd,* 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89 (1998))).  "In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may consider matters outside the pleadings."  *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### 2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))).

    B.  Analysis

       As noted, under 26 U.S.C. § 6532, a plaintiff may not bring a "suit or proceeding under [26 U.S.C. §] 7422(a) for the recovery of any internal revenue tax, penalty, or other sum" more than two years after the IRS has mailed the taxpayer a notice disallowing the refund claim. *See* 26 U.S.C. § 6532(a)(1). "Any consideration, reconsideration, or action by the [IRS] with respect to such claim following the mailing of a notice . . . of disallowance shall not operate to extend the period within which suit may be begun." *Id.* § 6532(a)(4).

       The IRS denied Plaintiff's Refund Claim by letter dated August 28, 2015. (*See* 2015 Denial Letter 2.) Plaintiff therefore had two years—until August 28, 2017—to bring an action in District Court to recover his overpayment. The 2015 Denial Letter informed Plaintiff of this

deadline and further informed him that the submission of an administrative appeal would not delay the two-year limitations period. (*See id.* at 5.) But Plaintiff did not file the instant Action until April 24, 2020, (*see* Dkt. No. 1)—that is, two years, seven months, and 27 days after the applicable limitations period had expired.

Of course, Plaintiff does not attempt to argue that this Action was filed within the two-year limitations period. Nor does he suggest that he lacked notice of this time limitation. Indeed, when Plaintiff's tax preparer submitted his Refund Claim Appeal on September 22, 2015, the submission included a copy of the 2015 Denial Letter signed by Plaintiff and his wife. (Gov't's Mem. 2; Refund Claim Appeal 5.)

To survive dismissal, therefore, Plaintiff argues that § 6532 is subject to equitable tolling, and urges the Court to toll the limitations period based on additional facts proffered in a declaration accompanying his Opposition brief. (*See* Pl.'s Opp'n 6–9.) "The doctrine of equitable tolling permits a court, 'under compelling circumstances, to make narrow exceptions to the statute of limitations in order to prevent inequity.'" *Mira v. Kingston*, 218 F. Supp. 3d 229, 236 (S.D.N.Y. 2016) (alteration and some quotation marks omitted) (quoting *In re U.S. Lines, Inc.*, 318 F.3d 432, 436 (2d Cir. 2003)). For its part, the Government vigorously disputes that § 6532 is subject to equitable tolling. (*See* Gov't's Mem. 6–7, 7 n.3; Gov't's Reply 2–5.) Even if the Court were to conclude otherwise, the Government argues, Plaintiff's Complaint fails to set forth allegations that would support equitably tolling the statute, despite the fact that Plaintiff was put on notice of the Government's argument and could have sought leave to amend the Complaint. (*See* Gov't's Mem. 7–8; Gov't's Reply 1, 5–7.) Finally, the Government argues that even if the Court were to consider the supplemental allegations attached to Plaintiff's

Opposition, there is still no basis to equitably toll the limitations period.  (*See* Gov't's Reply 1, 8–10.)

Whether § 6532(a) is subject to equitable tolling presents a difficult legal question on which federal courts have diverged.  To be sure, there is persuasive authority for the Government's position.  *See RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461–62 (Fed. Cir. 1998) (concluding that § 6532(a) is not subject to equitable tolling because it "does not contain an implied 'equitable' exception" as delineated by the Supreme Court's analysis in *United States v. Brockamp*, 519 U.S. 347 (1997), which held that the limitations period in a (then-)similarly drafted provision of the tax code, § 6511, was not subject to equitable tolling); *Tanne v. Comm'r*, No. 15-CV-296, 2016 WL 5173243, at *4 & n.39 (D. Utah Sept. 21, 2016) (relying on *RHI Holdings* "for the proposition that there is no equitable tolling exception in § 6532(a)); *Aljundi v. United States*, No. 12-CV-2079, 2013 WL 7121190, at *2 (C.D. Cal. July 11, 2013) (relying on *RHI Holdings*, among other cases, and recognizing that "courts have regularly rejected any equitable exception to § 6532(a)(1)'s limitations period"); *Brewer v. United States*, 390 F. Supp. 2d 1378, 1381 (S.D. Ga. 2005) (relying on *Brockamp* and *RHI Holdings* to conclude that § 6532(a) is not subject to equitable tolling).[6]  However, there is also authority going the other way, most notably from another court in this District.  *See Rosner v. United States*, No. 16-CV-7256, 2018 WL 3392867, at *5 (S.D.N.Y. July 12, 2018) (recognizing "the [post-*Brockamp*] judicial trend in favor of finding that there are no equitable exceptions to § 6532's statutory period," but nevertheless concluding that until the Second Circuit revisits its

---

[6] As the Parties both note, (*see* Gov't's Mem. 6 n.2; Pl.'s Opp'n 8), after the Supreme Court concluded in *Brockamp* that § 6511 was not subject to equitable tolling, Congress amended this section to include the financial-disability exception in what is now § 6511(h).  *See* Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. No. 105-206, § 3202, 112 Stat. 685, 740 (1998).  Congress made no such modification to § 6532(a).

pre-*Brockamp* decision in *Miller v. United States*, 500 F.2d 1007 (2d Cir. 1974), which held that § 6532 is subject to equitable exceptions, the court "[was] bound by *Miller*"); *see also Wagner v. United States*, 353 F. Supp. 3d 1062, 1067–68, 1069 (E.D. Wash. 2018) (concluding that the limitations period in § 6532(a) is non-jurisdictional, and therefore subject to equitable tolling).

Ultimately, though, the Court need not resolve this question to dispose of the instant Motion, for, as the following analysis shows, the Court's determination of this issue would make no difference in the final outcome of the case.  If § 6532(a) is not subject to equitable tolling, for reasons explained below, then the Motion should be granted as a matter of law.  However, even if the Court assumes without deciding, solely for purposes of resolving this Motion, that § 6532(a) *is* subject to equitable tolling, Plaintiff has failed to allege any facts that would justify tolling the statute's limitations period, and his Complaint must therefore be dismissed for this reason as well.

### 1.  The Government's Motion To Dismiss Pursuant to Rule 12(b)(1)

Assuming that § 6532(a) is not subject to equitable tolling, the Government's Motion is properly analyzed under Rule 12(b)(1), *see, e.g.*, *Phillips v. Lynch*, No. 15-CV-1514, 2016 WL 3248307, at *5 (E.D.N.Y. June 9, 2016) (stating that a motion to dismiss an action as untimely based on a jurisdictional statute of limitations not subject to equitable tolling "is properly analyzed under [Rule 12(b)(1)]"), and the Court may "consider matters outside the pleadings," *JTE Enters.*, 2 F. Supp. 3d at 338; *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (noting that "where jurisdictional facts are placed in dispute" on a Rule 12(b)(1) motion, "the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits" (alteration and citation omitted)).

Here, however, Plaintiff's supplemental allegations regarding his alleged financial disability, (*see* Pl.'s Opp'n 8–10; Pl.'s Decl. ¶¶ 21–36), are unavailing.  As noted, Plaintiff filed this Action well after the two-year limitations period in § 6532(a) had expired.  Assuming the Court may not equitably toll this period, Plaintiff's Complaint is untimely, and the Court lacks subject-matter jurisdiction to hear this case.  *See i3 Assembly, LLC v. United States*, 439 F. Supp. 3d 71, 78 (N.D.N.Y. 2020) ("When a plaintiff who sues the United States fails to comply with the relevant statute of limitations, the court is deprived of subject matter jurisdiction." (citation and quotation marks omitted)); *Mottahedeh v. United States*, 33 F. Supp. 3d 210, 212 n.1 (E.D.N.Y. 2014) (same); *Meminger v. U.S. Internal Revenue Serv.*, No. 91-CV-6971, 1993 WL 17311, at *3 (S.D.N.Y. Jan. 21, 1993) (same).

Accordingly, the Government's Motion To Dismiss the Complaint pursuant to Rule 12(b)(1) is granted.

### 2.  The Government's Motion To Dismiss Pursuant to Rule 12(b)(6)

In the alternative, even if § 6532(a) is subject to equitable tolling, the Court must still dismiss the Complaint.

If § 6532(a) is subject to equitable tolling, then the Government's Motion is properly analyzed under Rule 12(b)(6).  *See, e.g.*, *Phillips*, 2016 WL 3248307, at *5 (E.D.N.Y. June 9, 2016) (noting that a motion to dismiss an action as untimely based on a non-jurisdictional statute of limitations subject to equitable tolling is properly analyzed under Rule 12(b)(6)); *Gov't Emps. Ins. Co. v. United States*, No. 13-CV-4063, 2014 WL 582164, at *1 n.1 (E.D.N.Y. Feb. 14, 2014) (noting same).  Under such a scenario, the Court's consideration is ordinarily limited to "facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken," *Leonard F.*

*v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same); *Gov't Emps.*, 2014 WL 582164, at *2 (noting that a court may also consider "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference," as well as "documents or information contained in [the] defendant's motion papers if [the] plaintiff has knowledge or possession of the material and relied on it in framing the complaint"). "Equitable tolling," however, "is an affirmative defense, which means that Plaintiff did not need to affirmatively plead it in [his] [C]omplaint." *Mira*, 218 F. Supp. 3d at 237 (citation omitted); *Lopez v. Nassau Cnty. Sheriffs Dep't*, No. 17-CV-3722, 2018 WL 3321430, at *5 (E.D.N.Y. July 5, 2018) (recognizing same principle). Here, as noted, "Plaintiff has fully addressed the issue raised in the instant [M]otion in a supplemental affidavit[,]" (Pl.'s Opp'n 8), which the Court may consider in resolving this Motion, *see Mira*, 218 F. Supp. 3d at 237 (considering the "[p]laintiff's papers filed in opposition to the motion to dismiss" where the "[p]laintiff herself [had] raised the possibility of an equitable tolling argument in her response to the motion to dismiss"); *Lopez*, 2018 WL 3321430, at *5 (allowing the plaintiff to submit a "supplemental affidavit demonstrating entitlement to equitable tolling of his claims" in order to resolve a motion to dismiss).

Beginning with the facts alleged in the Complaint, the Court finds nothing that would justify equitably tolling the limitations period in § 6532(a). Without ever actually acknowledging that Plaintiff's Refund Claim was untimely, the Complaint asserts that the limitations period for filing such a claim "should be suspended" because Plaintiff was "financially disabled" under 26 U.S.C. § 6511(h). (*See* Compl. ¶¶ 17, 19.) But it says nothing of

Plaintiff's separate failure to file the instant lawsuit within the applicable two-year limitations period *after* his Refund Claim was denied in August 2015.

The Court has also reviewed each of the two exhibits attached to the Complaint. Exhibit B contains Plaintiff's February 2016 Letter and March 2020 Letter. (*See generally* Compl. Ex. B.) For reasons discussed *infra*, Exhibit B does not support Plaintiff's equitable tolling argument. Exhibit A contains two letters from physicians who examined Plaintiff. (*See generally* Compl. Ex. A (Dkt. No. 1-1).) The earliest letter is from Dr. Stanley L. Portnow, who performed a forensic psychiatric evaluation of Plaintiff. (*See id.* at 3.) This letter is dated October 1, 2011, and thus, contrary to Plaintiff's suggestion, (*see* Pl.'s Opp'n 9), its conclusions shed little if any light on equitable considerations that would justify tolling § 6532(a)'s limitations period, which did not begin to run until roughly four years after the letter was written.

Exhibit A's second letter, from Dr. Mayank P. Shah, is dated March 14, 2016. (*See* Compl. Ex. A, at 2.) Dr. Shah wrote that Plaintiff was "suffering from fatigue, jitteriness, lack of concentration and memory issues related to his posttraumatic stress disorder, anxiety, [and] reactive airway disease," and avers that "[t]his has prevented him from managing his financial affairs." (*Id.*) Relying on Dr. Shah's letter, Plaintiff seeks to equate the Congressionally drafted financial-disability exception in § 6511(h) with equitable tolling considerations that may arise under § 6532(a). (*See* Pl.'s Opp'n 9 (invoking Dr. Shah's conclusion regarding Plaintiff's financial disability and arguing that § 6511 is "a statute which the Government claims to be analogous to § 6532(a), and in which Congress explicitly expressed a desire to permit equitable tolling for financially disabled taxpayers" (record citation omitted)).) But although Dr. Shah's letter is more temporally relevant than Dr. Portnow's letter, it still does not tip the scales in favor of equitable tolling.

Even if the Court credits Dr. Shah's assertion and assumes that Plaintiff *himself* could not manage his financial affairs during the relevant time period, the February 2016 Letter in Exhibit B shows that only two weeks before Dr. Shah's letter was written, Plaintiff had stated that *his wife* "ha[d] been managing [his] finances [from] Dec[ember] 2002 to the present." (Compl. Ex. B, at 2.) Thus, insofar as Plaintiff seeks to equate the financial-disability exception in § 6511(h) with equitable tolling considerations under § 6532(a), his argument still fails, for his wife's assistance in financial matters removes him from the financial-disability exception. *See* 26 U.S.C. § 6511(h)(2)(B) ("An individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters."). In his supplemental declaration, Plaintiff tries to distinguish his admission by arguing that "[n]o other individual has had the *authority* to act on [his] behalf regarding financial matters at all relevant times," (Pl.'s Decl. ¶ 20 (emphasis added)), relying on the fact that he never gave his wife a power of attorney, (*see id.* ¶ 22 ("I never gave my wife a tax power of attorney or any other authority in my financial affairs because she is a spend-thrift."); Compl. Ex. B, at 2 (stating that "[a]t no time did [Plaintiff and his wife] fill out [a] Power of Attorney on [Plaintiff's] behalf"); *id.* at 3 (noting that Plaintiff "refused to give [his wife] either a standard Durable Power of Attorney under the NY General Obligation law or an IRS Power Of Attorney Form 2848 for [his] taxation and financial matters even when [he] was deemed professionally incapable to manage same")).[7] But Plaintiff cites no authority to suggest that the exception to the financial-disability exception—which applies when, for example, the

---

[7] It is possible Plaintiff was relying on this narrow distinction four years later when he wrote, in the March 2020 Letter, that he "never entrusted [his wife] to handle [his] . . . financial affairs." (*See* Compl. Ex. B, at 3.) That is the only way this statement can possibly be reconciled with his previous statement in the February 2016 Letter.

spouse of a financially disabled individual "is authorized to act on [his] behalf" in financial

matters—is only triggered when the financially disabled individual signs a power of attorney.

Accordingly, the March 2016 letter from Dr. Shah does little to support Plaintiff's equitable

tolling argument. [8]  However, even if the Court were to assume that Plaintiff was "financially

disabled" within the meaning of § 6511(h) during the two-year period from August 28, 2015 to

August 28, 2017, it would still decline to equitably toll the time limitation under § 6532(a), in

light of several considerations.

Equitable tolling is available only in "rare and exceptional circumstances." *Martinez v.

Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015) (citation and alteration

omitted); *see also Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017) (observing that

"[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an

entirely common state of affairs"); *Mira*, 218 F. Supp. 3d at 236 (explaining that courts may

equitably toll a limitations period when, for example, "a defendant fraudulently conceals from a

plaintiff the fact that the plaintiff has a cause of action, or when the plaintiff is induced by the

defendant to forego a lawsuit until the statute of limitations has expired" (citing *Pearl v. City of

Long Beach*, 296 F.3d 76, 82–83 (2d Cir. 2002))).  "As a general matter, a litigant seeking

equitable tolling must establish two elements: '(1) that he has been pursuing his rights diligently,

_____

[8] In his supplemental submission, Plaintiff also makes much of the fact that an IRS appeals officer at some point in time "advised [Plaintiff's] counsel that the IRS's original denial [of his Refund Claim] was in error because [Plaintiff] was financially disabled for purposes of 26 U.S.C. § 6511(h)."  (Pl.'s Decl. ¶ 39; *see also* Pl.'s Pre-Mot. Resp. 3; Pl.'s Opp'n 9 (arguing that "[h]ere, the IRS has already conceded that Plaintiff is financially disabled as defined in 26 U.S.C. § 6511(h)").)  However, this assertion is still irrelevant for purposes of resolving this Motion.  The IRS's (alleged) determination that Plaintiff was "financially disabled" under § 6511(h), and therefore unable to file an administrative refund claim prior to March 30, 2015, does not explain why he failed to bring the instant lawsuit in the relevant limitations period under § 6532(a), which ran from August 28, 2015 to August 28, 2017.

and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (quoting *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)); *see also Jenkins v. Greene*, 630 F.3d 298, 302–03 (2d Cir. 2010) (same); *Cosey v. Lilley*, 460 F. Supp. 3d 346, 371 (S.D.N.Y. 2020) (same).   In addition, there must be a causal connection between the extraordinary circumstances and a party's failure to timely file his action.   *See Bolarinwa*, 593 F.3d at 231 (equitable tolling only available "where the petitioner demonstrates a causal relationship between the extraordinary circumstances and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding" (citation, alteration, ellipsis, and quotation marks omitted)); *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) ("To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.   He must further demonstrate that those circumstances caused him to miss the original filing deadline.").   Finally, the Second Circuit has explained that "the term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."   *Watson*, 865 F.3d at 132 (citation and alteration omitted).

Courts in the Second Circuit have allowed equitable tolling based on a litigant's medical disability in extremely limited circumstances.   In *Harper*, for example, the court found that a petitioner's period of hospitalization, during which he "underwent multiple surgeries, experienced life-threatening complications, and did not have access to his legal papers," constituted extraordinary circumstances and caused his failure to file a habeas petition within the applicable limitations period.   *See* 648 F.3d at 135, 138.   The court also concluded that the petitioner had exercised reasonable diligence by sending a letter to the court requesting an extension of time to file his petition, despite the severity of his condition and the fact that he was

heavily medicated during this period.  *See id.* at 135, 138–39.  Accordingly, the court concluded that equitable tolling was justified during petitioner's period of hospitalization.  *See id.* at 142.

In *Barney v. H.E.L.P. Homeless Service Corp.*, No. 19-CV-5959, 2020 WL 1699984 (S.D.N.Y. Apr. 8, 2020), the court found that a plaintiff was entitled to equitable tolling for a 23-day period that began when he was hospitalized following a serious knife attack, and ended when he regained possession of his laptop and cellphone, *see id.* at *4.  There, the plaintiff gave the court a "particularized description" explaining "how the stabbing, hospitalization, and subsequent recovery" limited his ability to pursue his legal rights.  *Id.* at *5.  While hospitalized, for example, the plaintiff was on a breathing machine and was medicated with a "powerful opioid that impacted his ability to function"; upon his release, "he faced both medical and technological barriers to filing [his] lawsuit"—including the fact that he had use of only one hand, was still under the influence of OxyContin, and did not have access to his phone or laptop for several days.  *Id.*  Given these extraordinary circumstances, the court concluded equitable tolling was warranted.  *See id.*

In *Benn v. Greiner*, 275 F. Supp. 2d 371 (E.D.N.Y. 2003), the petitioner offered a letter from the clinical director of Sing Sing correctional facility stating that the petitioner "required treatment, including antipsychotic medication for a condition characterized by auditory hallucinations, paranoid thinking, depression[,] and anxiety," *id.* at 373.  In addition, the petitioner in *Benn* allowed the court to obtain his prison psychiatric records, which indicated "that [the] petitioner suffer[ed] from depression and schizophrenia."  *Id.*  The records further indicated that the plaintiff was "prone to distracting auditory hallucinations" and "ha[d] been confined to the mental health ward of Sing Sing prison for much of his sentence."  *Id.*  Relying on this information, plus the fact that the "[p]etitioner's state collateral proceedings and . . .

federal habeas applications were initiated with the help and at the behest of fellow inmates," the court found that the petitioner was entitled to equitable tolling. *Id.* at 374.

Far more often, however, courts have declined to apply equitable tolling based on a litigant's medical conditions. Indeed, as the foregoing cases illustrate, "[w]hile illness may constitute an exceptional circumstance, that is true only if the party seeking tolling was so incapacitated by her illness that she could not take action to protect her rights during the period she seeks to toll." *McGuirk v. Swiss Re Fin. Servs., Corp.*, No. 14-CV-9516, 2016 WL 10683305, at \*11 (S.D.N.Y. June 17, 2016) (denying an equitable tolling request where the plaintiff had "offer[ed] not a scintilla of evidence" to show how her alleged illnesses, treatment, and side effects had "affected her ability to comply with any deadline applicable to her claims"). In other words, "[a] party seeking to toll the statutes of limitations because of illness must provide the court with a 'particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.'" *Id.* (citation omitted). This is a high bar that litigants often fail to clear. *See, e.g.*, *Swanton v. Graham*, No. 07-CV-4113, 2009 WL 1406969, at \*5 (E.D.N.Y. May 19, 2009) (declining to equitably toll limitations period based on the petitioner's "alleged mental illness and related medical treatment" where the petitioner had "failed to provide the [c]ourt with any objective evidence . . . describing how the disability was causally related to his failure to timely file the instant petition"); *Victorial v. Burge*, 477 F. Supp. 2d 652, 655 (S.D.N.Y. 2007) (finding that a petitioner's bipolar disorder did not justify equitable tolling where the petitioner had "not demonstrate[d] that he was incapacitated for any time period during the year in which he was to file his petition," and had not established a causal connection between his illness and his failure to submit a timely petition); *Barbosa v. United States*, No. 01-CV-7522, 2002 WL 869553, at

*2–3 (S.D.N.Y. May 3, 2002) (finding that a petitioner's "conclusory" allegations regarding his various physical ailments did "not provide adequate proof that [his] alleged illnesses rendered him unable to file his motion in a timely manner[,]" particularly because the petitioner had not "specif[ied] the exact amount of time that he was incapacitated, nor detail[ed] exactly how being confined to a wheelchair [had] prevented him from filing his motion"); *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 173 (S.D.N.Y. 2000) ("[A] petitioner must allege more than the mere existence of physical or mental ailments to justify equitable tolling.  A petitioner has the burden to show that these health problems rendered him unable to pursue his legal rights during the [relevant limitations] period.")

Here too, Plaintiff has fallen far short of demonstrating the kind of extraordinary circumstances that would merit equitable tolling.  Plaintiff asserts that during the two-year limitations period, he "had to use all of [his] limited capacity to 'tread water' just to compel the IRS to process [his] annual returns and issue [his] refunds."  (Pl.'s Decl. ¶ 26.)  "Due to the combined effects of [his] disability and the IRS's dealings with [him]," he explains, "[he] became even more depressed and psychologically exhausted and could not envision [himself] enduring, let alone succeeding in, a protracted litigation with the Government, even with the assistance of counsel."  (*Id.* ¶ 35.)  Such vague, conclusory assertions—without any concrete explanation of how his illness incapacitated him and prevented him from filing a timely action— are insufficient to warrant equitable tolling.  *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (declining to apply equitable tolling where the plaintiff "offer[ed] no more than a statement that she suffer[ed] from 'paranoia, panic attacks, and depression[,]'" and explaining that the plaintiff's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of

her rights, is manifestly insufficient to justify any further inquiry into tolling”); *Chalasani v. Fran*, No. 13-CV-6535, 2015 WL 2129773, at *8 (S.D.N.Y. Feb. 13, 2015) (“[The plaintiff’s] . . . barebones statement of depression in her complaint do[es] not plausibly allege that she suffered mental illness sufficient to rise to the necessary level of an ‘extraordinary hardship’ for the purposes of equitable tolling.”), *adopted by* 2015 WL 2137707 (S.D.N.Y. May 6, 2015); *Serrano v. USA United Transit Bus Inc.*, No. 09-CV-2710, 2009 WL 3698395, at *7 (E.D.N.Y. Nov. 3, 2009) (“[The] [p]laintiffs’ assertion that Serrano suffered from post-traumatic stress disorder and depression does not provide a sufficient basis for equitable tolling, because [the] plaintiffs simply do not explain how the illness stood in the way of Serrano’s ability to comply with the limitations period.”).

Plaintiff also fails to allege facts suggesting the exercise of reasonable diligence in pursuit of his legal rights, particularly given his ability to file his taxes and pursue administrative remedies.  For example, Plaintiff still managed to file a timely income tax return in 2016, (*see* Pl.’s Decl. ¶ 30), and, in June 2016, with more than a year left to bring suit against the Government, Plaintiff, through his attorney, submitted to the IRS a request that his Refund Claim be found timely pursuant to § 6511(h), (*see* Gov’t’s Pre-Mot. Letter 2; Financial Disability Request 9).  Courts have repeatedly denied equitable tolling under similar facts.  *See, e.g., Watson*, 865 F.3d at 133 (holding that a litigant’s depression did not justify equitably tolling a two-year statute of limitations for a false-imprisonment claim because the litigant’s “[d]epression [had] not prevent[ed] him from contesting his citizenship before [an] immigration judge” during the relevant period); *Colon v. Kersey*, No. 17-CV-4671, 2018 WL 6258572, at *3 (S.D.N.Y. Nov. 29, 2018) (“Petitioner’s extensive participation in post-conviction litigation throughout the period he seeks to have tolled wholly undermines his contention that his health problems

rendered him unable to timely file the instant Petition."); *Lloret v. Lockwood Greene Eng'rs, Inc.*, No. 97-CV-5750, 1998 WL 142326, at *4 (S.D.N.Y. Mar. 27, 1998) (concluding that the plaintiff's depression did not justify equitable tolling where the "[p]laintiff was not so affected that he was unable to take care of his legal affairs, as evidenced by his filing of [a] bankruptcy claim"); *see also Franklin v. New York*, 653 F. App'x 771 (2d Cir. 2016) (summary order) (declining to equitably toll a limitations period based on the petitioner's alleged mental illness because the petitioner's "assertion that an extraordinary circumstance prevented him from timely filing his petition . . . [was] belied by his ability to draft, during the operative time period, a motion to vacate [his] judgment in state court, and diligently study for his GED exam"). Whatever the nature of his alleged financial disability, it clearly did not keep Plaintiff from continuing to prosecute his administrative appeal or complying with his basic obligations as a taxpayer.  These facts are fatal to Plaintiff's equitable tolling request.

The other allegations in Plaintiff's supplemental declaration do not alter the Court's conclusion.  As noted *supra* n.8, it is irrelevant that the IRS (allegedly) determined that its 2015 denial was in error, (*see* Pl.'s Decl. ¶ 39), for that issue has no bearing on whether the instant Action is timely.  Plaintiff's allegation that he was "financially and medically disabled . . . during the period from August 28, 2015 to August 28, 2017," (*id.* ¶ 4), is belied by his timely filing of income taxes and his continued prosecution of his administrative appeal.  His assertion that "[n]o other individual has had the authority to act on [his] behalf regarding financial matters at all relevant times," though perhaps true in a technical sense, is nevertheless called into question by his February 2016 admission that his wife had been managing his financial affairs, (Compl. Ex. B, at 2); and, at any rate, this allegation is clearly oriented around the financial-disability exception in § 6511(h) and, in view of the considerations just discussed, does not justify the

extraordinary remedy of equitable tolling.  Finally, the allegations of bad-faith dealings on the part of the IRS, (*see* Pl.'s Decl. ¶¶ 23–36), are speculative and irrelevant.

The Court has no doubt this has been a frustrating and exhausting ordeal for Plaintiff, (*see, e.g.*, *id.* (detailing laborious interactions with the IRS and bureaucratic delays)), and it is sympathetic to his plight, particularly in view of his service to the City of New York and the physical and psychological torment he has endured in the wake of September 11.  As noted, however, equitable tolling is reserved for plaintiffs who show reasonable diligence in the face of extraordinary circumstances.  Neither element is present here.  Because "equity will not intervene to reward negligence," *Harper*, 648 F.3d at 138, this Court must deny Plaintiff's request for equitable tolling and grant the Government's Motion pursuant to Rule 12(b)(6).

### III.  Conclusion

For the foregoing reasons, the Government's Motion is GRANTED.

Though Plaintiff did not (and was under no obligation to) address the Government's affirmative statute-of-limitations defense in his Complaint, he subsequently addressed the issue in his Opposition papers, including by way of a supplemental declaration that the Court has considered in reaching its conclusion.

Accordingly, Plaintiff's Complaint is dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 15), and close this case.

SO ORDERED.

Dated:  February 25, 2021
        White Plains, New York

_____
        KENNETH M. KARAS
        United States District Judge